```
                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA


LOLITA ANDREWS,                   )    No.  CV 05-8631-JTL
                                  )
            Plaintiff,            )
                                  )    MEMORANDUM OPINION AND ORDER
      v.                          )
                                  )
JO ANNE B. BARNHART,              )
Commissioner of Social            )
Security,                         )
                                  )
            Defendant.            )
_____)
```

**PROCEEDINGS**

On December 16, 2005, Lolita Andrews ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for supplemental security income. On April 4, 2006, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On June 12, 2006, defendant filed an Answer to Complaint. On August 17, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///
///

**BACKGROUND**

On April 22, 1999, plaintiff filed an application for supplemental security income. (Administrative Record ["AR"] at 180-82). Plaintiff alleged that, beginning on November 1, 1993, she was unable to work because she suffered from impairments in her back, legs, head, and heart. (AR at 196). The Commissioner denied plaintiff's application for benefits initially and upon review. (AR at 163-68, 171-74).

Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 175). On February 20, 2001, the ALJ conducted a hearing in Los Angeles, California. (AR at 28-52). Plaintiff appeared at the hearing with counsel and testified. (Id.). On October 3, 2001, the ALJ issued his decision denying benefits. (AR at 17-23). In his decision, the ALJ concluded that although plaintiff suffered from severe impairments of musculoskeletal strain, scoliosis, and bipolar disorder, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 18-19). The ALJ then determined that plaintiff was able to perform a significant range of medium, simple unskilled work, including her past relevant work as a food service worker, cashier, and teacher's aide. (AR at 22). Ultimately, the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On October 12, 2001, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 10D). On January 22, 2002, the Appeals Council affirmed the ALJ's decision. (AR at 7-8). Plaintiff appealed the matter to the District Court.

On August 20, 2003, this Court remanded the case and instructed the ALJ to fully consider the relevant evidence regarding plaintiff's mental and physical impairments. (AR at 363-80). On November 5, 2003, the Appeals Council issued an order vacating the ALJ's decision and remanding the case to the ALJ for further proceedings in accordance to the Court's August 20, 2003 order. (AR at 381-82).

On March 10, 2005, the ALJ conducted a new hearing in Los Angeles, California in accordance with the remand order. (AR at 578-623). Plaintiff appeared with counsel and testified. (AR at 590-619, 620-22). Randi Langford-Hetrick, a vocational expert, also appeared and testified. (AR at 619-20). On October 4, 2005, the ALJ issued a decision denying benefits. (AR at 333-42). In his decision, the ALJ concluded that plaintiff's physical and mental impairments did not rise to the level of a severe impairment. (AR at 341). As such, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

Thereafter, plaintiff appealed the ALJ's decision directly to this Court. (AR at 327).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ improperly determined that plaintiff did not suffer from a severe impairment.

2. The ALJ improperly evaluated plaintiff's mental condition by concluding that plaintiff did not have a mental impairment independent of drug and alcohol abuse.

///
///

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. Id. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities. Id. at 140-41. Step three requires a consideration of

whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. Bowen, 482 U.S. at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. Id. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. Id. at 142. The claimant is entitled to disability benefits only if he is not able to perform such work. Id.

**B.   Whether the ALJ Properly Assessed Plaintiff's Mental Impairment**

Plaintiff claims that the ALJ erred in finding that she did not suffer from a severe mental impairment. Plaintiff also contends that the ALJ erred in finding that her mental impairment was the result of drug and alcohol abuse. First, plaintiff notes that she was assessed with Global Assessment of Functioning[1] ("GAF") scores of 45 and 50. (Joint Stip. at 5, 7, 8). Plaintiff also notes that she was diagnosed with schizoaffective disorder with untreated thought disorder, Bipolar I disorder, and depression. (Joint Stip. at 7, 8). Finally, plaintiff's treating records indicate that she underwent mental health therapy for isolative behavior, depression, and lack of energy and was prescribed various medications for her mental condition. (Joint Stip.

---

[1] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

5

at 8). Plaintiff contends that these factors establish that she suffers from a severe mental impairment.

The ALJ found that plaintiff suffered from substance abuse addiction, as well as mental depression, but that the evidence was insufficient to establish if plaintiff had a mental impairment independent of her drug and alcohol abuse. (AR at 339). The ALJ also noted that the evidence suggested that plaintiff's symptoms of mental impairment could be attributed to drug and alcohol abuse. (AR at 340). Furthermore, the ALJ stated that all of the examining physicians noted drug and/or alcohol abuse in their evaluations of plaintiff's mental condition, and found that plaintiff admitted to alcohol use in October 2004, and that plaintiff tested positive for amphetamines and barbiturates at the same time. (Id.).

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions." 20 C.F.R. § 404.1521(b)(3)-(4); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen, 80 F.3d at 1290 (quoting Yuckert, 841 F.2d at 306). The severity inquiry at step two is a de minimus screening device, intended to allow the Commissioner to dispose of groundless claims. Bowen v. Yuckert, 482

6

U.S. 137, 153 (1987); Smolen, 80 F.3d at 1290.

In 1996, Congress enacted Section 105 of the Contract with America Advancement Act, including a subsection entitled "Denial of Disability Benefits to Drug Addicts and Alcoholics." 42 U.S.C. § 423(d)(2)(C).[2] This statute and the regulations promulgated thereunder operate to deny social security disability benefits to claimants whose alcoholism or drug addiction is a contributing factor material to the determination of his or her disability. See 20 C.F.R. § 416.935.[3] Addressing the application of these provisions, the Ninth Circuit held in Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001), that the five-step sequential evaluation must first be conducted "without separating out the impact of alcoholism or drug addiction." Bustamante, 262 F.3d at 955. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If, however, after conducting this inquiry, the ALJ concludes that an individual is disabled and there is medical evidence of his drug addiction or alcoholism, then it must be determined whether the claimant would still be found disabled if he stopped using alcohol or drugs. Id. (citing 20 C.F.R. §§ 404.1535, 416.935). At this stage, the claimant would bear the burden

---

[2] Section 423(d)(2)(C) provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

[3] 20 C.F.R. § 416.935(b)(1) provides that "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."

of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. Ball v. Massanari, 254 F.3d 817, 822-23 (9th Cir. 2001); see also Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998)(remanding to give claimant an opportunity to present evidence relevant to this issue).

Here, the ALJ failed to conduct the initial five-step inquiry without separating out the impact of alcoholism or drug abuse. Bustamante, 262 F.3d at 955. Instead, the ALJ at the outset determined that plaintiff's drug and alcohol abuse and her mental impairment were intertwined, and concurrently found that plaintiff's mental impairments could not be analyzed separately from her alleged drug and alcohol abuse. (AR at 339-40).

But the medical evidence suggests that plaintiff's physicians in the past had assessed her mental impairments independently from any alcohol and drug abuse. For example, physicians had consistently assessed plaintiff with GAF scores of 45 and 50.[4] (AR at 289, 450, 533, 535). On August 12, 1999, the treating source who assessed plaintiff with a GAF score of 45 also diagnosed her with bipolar disorder, but made no reference to any drug or alcohol abuse.[5] (AR at 289). Similarly, on October 11, 2004, Cyril Barnert, M.D., performed a Complete Psychiatric Evaluation of plaintiff and assessed her with

---

[4] A GAF score between 41 to 50 indicates "[s]evere symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e,g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

[5] Shortly thereafter, on September 27, 1999, treatment notes indicate that a physician evaluating plaintiff at the same facility noted "no alc[ohol] or drug abuse" in the evaluation. (AR at 282).

a GAF score of 50. (AR at 445-50). Notably, in his evaluation, Dr. Barnett wrote, "I found no history to substantiate the concern about current drug use." (AR at 450). Similarly, treating sources from the Los Angeles County of Mental Health assessed plaintiff with GAF scores of 45, with no mention of any drug or alcohol abuse. (AR at 533, 535). The ALJ's contention, therefore, that "all of the examining physicians [] included drug and/or alcohol abuse in their evaluations of the claimant's mental condition" (AR at 340) was not supported by the record.[6] In fact, several physicians found plaintiff had severe symptoms or serious impairment without noting any drug or alcohol abuse.

Moreover, plainitff's mental impairment appears to have had more than a "minimal effect" on plaintiff's ability to perform work-related tasks. Medical records indicate that over the years, plaintiff has been diagnosed with bipolar disorder, schizoaffective disorder with untreated thought disorder, and depression. (AR at 244, 282, 289, 317, 323, 324, 449, 533, 535). From 1999 to 2004, treatment notes indicated that plaintiff underwent mental health therapy for isolative behavior, depression, and lack of energy. (AR at 395, 400, 410, 412,

---

[6] In fact, none of the examining physicians noted drug or alcohol abuse in their evaluations of plaintiff. On September 11, 1997, Sanniah Siciarz, M.D., noted in his Internal Medicine Evaluation of plaintiff that she "denies alcohol use." (AR at 151). On June 14, 1999, Alex Bloom, M.D., performed an Internal Medicine Examination of plaintiff and wrote that plaintiff denied "drinking, smoking or drug use." (AR at 268). On October 6, 2004, Frank W. Cunningham, M.D., performed an Orthopedic Consultation of plaintiff and wrote, "She drinks beer 'when I am in pain.'" (AR at 433). The Court finds that such remark falls short of "alcohol abuse." (AR at 340). On October 11, 2004, Cyril Barnert, M.D., performed a Complete Psychiatric Evaluation of plaintiff and wrote, "I found no history to substantiate the concern about current drug use." (AR at 450).

413, 483, 544-50, 556, 557-62). Notably, on February 27, 2004, a treating source at the Los Angeles County Department of Mental Health found plaintiff's prognosis fair and, more recently, on July 8, 2004, her prognosis was guarded. (AR at 535, 533). Additionally, plaintiff's treating physicians prescribed the medications Clonidine,[7] Tegretol,[8] Lamictal,[9] Trazodone,[10] and Paxil,[11] to treat her mental impairments. (AR at 220, 280, 281, 311, 313, 314, 399, 404, 410,

---

[7] Clonidine may be "used to ease withdrawal symptoms associated with the long-term use of narcotics, alcohol and nicotine (smoking). In addition, clonidine may also be used for migraine headaches, hot flashes associated with menopause, attention deficit hyperactivity disorder, and other conditions..." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Clonidine"; follow "Clonidine Oral" hyperlink; then follow "Uses").

[8] Lamictal or Lamotrigine is "used alone or with other medications to prevent or control seizures (epilepsy) in people aged 2 and older. It may also be used to help prevent the extreme mood swings of bipolar disorder." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Lamictal"; follow "Lamotrigine - Oral" hyperlink; then follow "Uses").

[9] Tegretol or Carbamazepine is may be used "to treat certain mental/mood conditions (e.g., bipolar disorder, schizophrenia) and other types of nerve pain." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Tegretol"; follow "Carbamazepine - Oral" hyperlink; then follow "Uses").

[10] Trazodone or Desyrel is used to treat depression. http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Trazodone"; follow Trazodone - Oral" hyperlink; then follow "Uses").

[11] Paxil is used "to treat depression, panic attacks, obsessive-compulsive disorder (OCD), social anxiety disorder (social phobia), post-traumatic stress disorder (PTSD), and generalized anxiety disorders (GAD)." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Paxil"; follow "Paxil - Oral" hyperlink; then follow "Uses").

10

431, 432, 446, 485, 491, 499, 525).

Furthermore, as previously noted, plaintiff was assessed with three GAF scores of 45 and one GAF score of 50. A GAF score between 41-50 indicates severe symptoms, including suicidal ideation, severe obsessional rituals, and frequent shoplifting, or any serious impairment in social, occupation, or school functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000). Notwithstanding the low GAF scores, including three from treating sources and three assessed as recently as 2004, the ALJ did not address any of the scores in his decision. Such omission constitutes error. The medical opinions of plaintiff's treating physicians are entitled to special weight. Reddick v. Chatter, 157 F.3d 715, 725 (9th Cir. 1998). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chatter, 81 F.3d 821, 830 (9th Cir. 1995); see also Saelee v. Chatter, 94 F.3d 520 (9th Cir. 1996). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Reddick, 157 F.3d at 725. Here, the ALJ failed to address a significant finding in the physicians' GAF scores, notwithstanding the fact that plaintiff was repeatedly and consistently assessed with scores indicating severe symptoms or serious impairment.

The sum of these circumstances is sufficient to meet the de minimus standard that must be applied to the Step Two severity inquiry. See Bowen, 482 U.S. at 153; Smolen, 80 F.3d at 1290. Moreover, the Court finds unpersuasive the ALJ's findings with respect

1  to his failure to evaluate plaintiff's mental impairments separately
2  from her alleged drug and alcohol abuse. Accordingly, in light of the
3  foregoing, the Court concludes that the ALJ failed to properly
4  evaluate plaintiff's mental impairment.

**C.     Reversal and Remand is Appropriate**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Id; see also Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, the Court finds remand appropriate. On remand, the ALJ must evaluate the plaintiff's mental impairment by conducting the five-step sequential evaluation without separating out evidence of alcoholism or drug abuse. If, after conducting this inquiry, the ALJ concludes that plaintiff is disabled and there is medical evidence of her drug addiction or alcoholism, then the ALJ must determine whether plaintiff would still be found disabled if she stopped using alcohol

or drugs.[12]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: November 29, 2006

                                               /s/
                                       JENNIFER T. LUM
                                       UNITED STATES MAGISTRATE JUDGE

---

[12] In the Joint Stipulation, plaintiff also claims that the ALJ improperly determined that plaintiff did not suffer from a severe impairment. As explained above, however, the ALJ's failure to properly evaluate the medical evidence with respect to plaintiff's mental impairment constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.